IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TIMOTHY SUMPTER,                     )
                                     )
                    Petitioner,      )
                                     )
        v.                           )        Case No. 19-3267-JWL
                                     )
STATE OF KANSAS,                     )
                                     )
                    Respondent.      )
                                     )
_____)

## MEMORANDUM AND ORDER

This matter comes before the Court[1] on Timothy Sumpter's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For the reasons set forth below, the petition is **granted in part and denied in part**.  The petition is granted with respect to petitioner's aggravated kidnapping conviction, which is hereby vacated.  The petition is otherwise denied.  In addition, petitioner's motion for discovery and an evidentiary hearing (Doc. # 23) is **denied**, and the State's motion to strike petitioner's notice of supplemental authority (Doc. # 25) is **denied**.

### I.        Background

Petitioner was charged in the District Court of Sedgwick County, Kansas, with various offenses in three separate cases arising out of his alleged attacks on four women:

---

[1] This case was reassigned to the undersigned judge on June 19, 2020.

11-CR-1187 (involving alleged victim A.E.); 11-CR-1290 (A.C. and A.P.); and 11-CR-1638 (J.B.).  The district court granted the State's motion to consolidate the cases for trial.  In 2012, a jury convicted petitioner of the following offenses: one count of aggravated kidnapping, in violation of K.S.A. § 21-3421 (J.B.); one count of attempted rape, in violation of K.S.A. § 21-3301 (J.B.); two counts of aggravated sexual battery, in violation of K.S.A. §21-3518(a)(1) (A.E. and J.B.); two counts of sexual battery, in violation of 21-3517(a) (A.C. and A.P.); and one count of criminal restraint, in violation of K.S.A. § 21-3424(a) (A.E.).  The district court sentenced petitioner to 351 months of incarceration.  The Kansas Court of Appeals (KCOA) upheld petitioner's convictions and sentence, and the Kansas Supreme Court denied review.  *See State v. Sumpter*, 2013 WL 6164520 (Kan. Ct. App. Nov. 22, 2013) (unpub. op.) (per curiam), *rev. denied* (Kan. Jan. 15, 2015).

On May 2, 2017, the state district court denied petitioner's petition for post-conviction relief pursuant to K.S.A. § 60-1507.  On January 18, 2019, the KCOA affirmed that decision, and again the Kansas Supreme Court denied review.  *See Sumpter v. State*, 2019 WL 257974 (Kan. Ct. App. Jan. 18, 2019) (unpub. op.), *rev. denied* (Kan. Dec. 16, 2019).  On December 30, 2019, petitioner filed the instant petition under Section 2254.  The parties have briefed petitioner's claims, and the petition is now ripe for ruling.


## II.    <u>Governing Standards</u>

Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides for consideration of a prisoner's writ of habeas corpus on the ground that "he is in custody in violation of the Constitution or laws or treaties of the United

States." *See* 28 U.S.C. § 2254(a).  The petitioner must exhaust state court remedies.  *See id.* § 2254(b), (c).  Relief shall not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See id.* § 2254(d).  The standard is very strict, as explained by the Tenth Circuit:

> The KCOA [Kansas Court of Appeals] rejected this clam on the merits.  Our review is therefore governed by the AEDPA, which erects a formidable barrier to federal habeas relief and requires federal courts to give significant deference to state court decisions on the merits.
>
> . . .
>
> Clearly established law is determined by the United States Supreme Court, and refers to the Court's holdings, as opposed to the dicta.  A state court decision is "contrary to" the Supreme Court's clearly established precedent if the state court applies a rule different from the governing law set forth in Supreme Court cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.
>
> A state court decision is an "unreasonable application" of Supreme Court precedent if the state court identifies the correct governing legal rule from the Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  Evaluating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule – like the one adopted in *Strickland* – the more leeway state courts have in reaching outcomes in case-by-case determinations.  An *unreasonable* application of federal law is therefore different from an *incorrect* application of federal law.
>
> We may issue the writ only when the petitioner shows there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with the Supreme Court's precedents.  Thus, even a strong case for

> relief does not mean the state court's contrary conclusion was unreasonable. If this standard is difficult to meet – and it is – that is because it was meant to be. Indeed, AEDPA stops just short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. Accordingly, we will not likely conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy.

*See Frost v. Pryor*, 749 F.3d 1212, 1222-24 (10th Cir. 2014) (internal quotations and citations and footnote omitted).

### III.    Motion for an Evidentiary Hearing and Discovery

By separate motion, petitioner requests an evidentiary hearing on his claims. Specifically, petitioner requests a hearing to address the issues of whether counsel's performance was deficient and whether African-Americans were systematically underrepresented on jury venires in Sedgwick County District Court at the time of his trial. The Court denies this request.

First, a hearing concerning counsel's performance would not be helpful to the resolution of petitioner's ineffective assistance claims, as those claims may be decided on the record before the Court.   With respect to the claim concerning the aggravated kidnapping conviction, on which the Court has granted relief, the Court is able to determine that counsel's performance was deficient based on the state court record.  *See infra* Part IV.A.  Petitioner's other ineffective assistance claims have been denied based on a lack of prejudice, and thus no factual determinations concerning counsel's performance are required.  *See infra* Part IV.B, C, D, E.

Second, the Court denies the request for hearing by which petitioner seeks to develop evidence to support his jury venire claim.  Section 2254 provides that state court factual determinations are presumed to be correct, and that if a petitioner has failed to develop the factual basis for a claim in the state courts, the federal court shall not hold an evidentiary hearing unless the petitioner shows (a) that the claim relies on a new rule of constitutional law or on a factual predicate that could not have been discovered previously with due diligence; and (b) the facts show by clear and convincing evidence that the petitioner would not have been convicted but for constitutional error.  *See* 28 U.S.C. § 2254(e).  Petitioner argues that he acted with due diligence by requesting an evidentiary hearing in the state courts.

It is true that if a state court has made factual findings without considering the petitioner's evidence, then a federal court should not necessarily defer to those findings, and a federal court hearing may be warranted.  *See Wilson v. Sirmons*, 536 F.3d 1064, 1079 (10th Cir. 2008).  In this case, however, as discussed below, the state courts did not make a factual finding; rather, those courts ruled that petitioner had failed to present evidence to support his claim that African-Americans were systematically excluded or underrepresented in the county's jury venires.  *See infra* Part IV.E.

"[A]n evidentiary hearing is not a fishing expedition.  Instead, its function is to resolve disputed facts."  *See Banks v. Workman*, 692 F.3d 1133, 1144 n.4 (10th Cir. 2012); *see also Anderson v. Attorney Gen'l of Kan.*, 425 F.3d 853, 860 (10th Cir. 2005) ("[t]he purpose of an evidentiary hearing is to resolve conflicting evidence;" court did not abuse its discretion in denying an evidentiary hearing when petitioner did not cite evidence

supporting his claim).  A federal district court is not required to conduct an evidentiary hearing on a claim if the petitioner has not presented available evidence.  *See Cannon v. Mullin*, 383 F.3d 1152, 1177 (10th Cir. 2004).  "District courts are not required to hold evidentiary hearings in collateral attacks without a firm idea of what the testimony will encompass and how it will support a movant's claim."  *See United States v. Cervini*, 379 F.3d 987, 994 (10th Cir. 2004).

Although petitioner requests a hearing to support his claim, he has not proffered any evidence to be presented at such a hearing, and thus there are no disputed facts to be resolved at such a hearing.  Nor did petitioner identify any such evidence in requesting a hearing in the state courts.  Petitioner is not entitled to an evidentiary hearing in order to conduct a fishing expedition for favorable evidence.  Accordingly, a hearing is not warranted in this case.

In the same motion, petitioner requests leave to conduct discovery, again with respect to his ineffective assistance claims and his jury venire claim.  A habeas petitioner is not entitled to discovery as a matter of course.  *See Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Under the applicable rule, a party shall be entitled to discovery if the judge grants leave in the exercise of his or her discretion and for good cause shown.  *See id.* (citing Rule 6(a), Rules Governing § 2254 Cases).  Good cause may exist where specific allegations provide a reason to believe that the petitioner may be able to demonstrate entitlement to relief.  *See id.* at 908-09.  Mere speculation is unlikely to provide good cause for a discovery request on collateral review.  *See Strickler v. Greene*, 527 U.S. 263, 286 (1999).

The Court concludes in its discretion that petitioner has not established good cause for discovery in this case.  Again, additional evidence concerning the performance of trial and appellate counsel would not affect this Court's rulings, as the Court has denied the ineffective assistance claims based on a lack of prejudice.  With respect to the jury venire issue, petitioner has not identified specific evidence to support his claim that he expects to obtain through discovery, and the Court will not authorize a fishing expedition based on mere speculation.  Accordingly, the Court denies the request for discovery.

## IV.    Analysis of Petitioner's Claims

### A.    _Kidnapping Conviction_

Petitioner first claims that he received ineffective assistance of trial and appellate counsel with respect to their defense of the charge of the aggravated kidnapping of J.B. in violation of K.S.A. § 21-3421.   "To establish ineffective assistance of counsel, [a] [d]efendant must show 'that counsel's representation fell below an objective standard of reasonableness' and that he was prejudiced by the deficient performance."  _United States v. Moya_, 676 F.3d 1211, 1213 (10th Cir. 2012) (quoting _Strickland v. Washington_, 466 U.S. 668, 687-88, 692 (1984)).  The test for establishing prejudice is as follows:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

_See Strickland_, 466 U.S. at 694.  The defendant does _not_ need to show that counsel's deficient performance more likely than not altered the outcome. _See id._ at 693.

Petitioner argues that he should not have been convicted of aggravated kidnapping because any confinement of the victim by force was not independent of the intended crime of attempted rape under the standard set forth by the Kansas Supreme Court in *State v. Buggs*, 219 Kan. 203 (1976).  Petitioner argues – and the record reveals – that trial counsel failed to assert that defense at any stage, including at the preliminary hearing, in examining the witnesses, in arguing for a directed verdict, in proposing and arguing jury instructions, and in closing argument.  Nor did appellate counsel raise this issue on direct appeal.  To determine whether counsel were deficient in failing to raise this issue and whether petitioner suffered prejudice from that failure, the Court must examine the merits of petitioner's argument under Kansas kidnapping law.

At trial, J.B. testified to the following facts:  Petitioner approached J.B. as she walked to her car from a bar in Wichita.  When she was halfway into her car, petitioner forced his way inside with her, punched her, and closed the door.  A physical fight ensued, during which petitioner punched J.B. multiple times, he choked her with his knee on her throat as she lay on the floor of the passenger side, and he grabbed her hand and ripped it down when she attempted to reach for the door handle.  J.B. blacked out, and when she came to, she found petitioner masturbating while still choking her with his knee.  When petitioner placed her hand on his penis, she pretended to go along, but then punched petitioner and managed to kick him out of the car and lock the doors.  Petitioner ended up with J.B.'s car keys, however, and he dangled them in front of the window for her to see.  Petitioner had ripped the keys out of J.B.'s hand at the beginning of the fight, which, based on his statements at the time, she believed he had done because he did not want J.B. to use

the mace attached to the keychain.  J.B. did not know whether petitioner had thrown the keys out of the car at any point or how the keys ended up outside.  J.B. opened the door slightly to accept petitioner's offer of the keys, but petitioner forced his way into the car again, and the fight resumed, during which time petitioner rubbed his crotch against J.B.'s rear.  Again J.B. managed to kick petitioner out of the car, and she was able to escape when other persons approached the car.

In his testimony, petitioner described J.B. as the aggressor, and he stated that he was pulled into the car when J.B. grabbed his shirt.  He claimed that he slapped J.B. but did not punch her.  He stated that he did intend to have sex with her, after she came on to him.  He testified that he pulled the mace off the keychain and threw it out of the car, and that he choked J.B. to take her keys from her hand because she was hitting him with the keys.  He did not recall if he threw the keys out of the car.  He admitted that he did commit a sexual battery against J.B.

Under K.S.A. § 21-3421, aggravated kidnapping is a kidnapping in which bodily harm is inflicted upon the person kidnapped.  *See id.*  Kidnapping is defined as follows:

> Kidnapping is the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person:
>
> (a)  For ransom, or as a shield or hostage;
>
> (b)  to facilitate flight or the commission of any crime;
>
> (c)  to inflict bodily injury or to terrorize the victim or another; or
>
> (d)  to interfere with the performance of any governmental or political function.

*See id.* § 21-3420.

In petitioner's case, this charge was submitted to the jury only as a confining by force with the intent to facilitate the commission of the crime of rape. Thus, the charge was not submitted to the jury, and the jury was not instructed, on a theory that would also include a "taking" under the statute. The Kansas Supreme Court has indicated that "taking" and "confining" describe different conduct for purposes of this statute. *See State v. Holloman*, 240 Kan. 589, 594 (1987). At the hearing in the trial court on petitioner's post-conviction petition, the State argued that there was sufficient evidence under the kidnapping statute based on petitioner's taking J.B. into the car and his confining her in the care by his use of force and threats while fighting with her inside the car and by his use of deception while outside the car with her keys. The State then conceded, however, that because the "taking" element was not submitted the jury, the court could disregard the argument based on taking J.B. into the car, and the court agreed that the State had abandoned any such argument based on a taking. Similarly, only the element of force was submitted to the jury; thus, the State may not justify the conviction by reference to deception or threats, and the State has made no such argument to this Court.

Petitioner's position is based on the Kansas Supreme Court's interpretation of the kidnapping statute in *Buggs*. The court interpreted the "facilitation" requirement of Section 21-3420(b) as follows:

> To be kidnapping, therefore, the taking need not be necessary to the accomplishment of the underlying crime, but it must be aimed at making it at least "easier".
>
> Further, to facilitate in our minds means something more than just to make more convenient. We think that a taking or confining, in order to be said to "facilitate" a crime, must have some significant bearing on making

the commission of the crime "easier" as, for example, by lessening the risk of detection.

. . .   We agree with [other courts whose cases were discussed previously in the opinion] that a kidnapping statute is not reasonably intended to cover movements and confinements which are slight and "merely incidental" to the commission of an underlying lesser crime.  Thus the "standstill" robbery and the ordinary rape require as a necessary incident some "confinement" of the victim – they are nevertheless not kidnappings solely for that reason.  In the light of our statute, however, we cannot agree that merely because a taking "facilitates" another crime it must necessarily be "merely incidental" to the other crime.  Whether a taking substantially "facilitates" another crime or whether it is "merely incidental" are two different things.  The same taking cannot be both.

*See Buggs*, 219 Kan. at 215.  The court announced its holding as follows:

We therefore hold that if a taking or confinement is alleged to have been done to facilitate the commission of another crime, to be kidnapping the resulting movement or confinement:

(a)  Must not be slight, inconsequential and merely incidental to the other crime;

(b)  Must not be of the kind inherent in the nature of the other crime; and

(c)  Must have some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection.

*See id.* at 216.  The court provided the following non-exhaustive list of examples:

For example:  A standstill robbery on the street is not a kidnapping; the forced removal of the victim to a dark alley for robbery is.  The removal of a rape victim from room to room within a dwelling solely for the convenience and comfort of the rapist is not a kidnapping; the removal from a public place to a place of seclusion is.  The forced direction of a store clerk to cross the store to open a cash register is not a kidnapping; locking him in a cooler to facilitate escape is.

*See id.*

Petitioner argues that any confinement of J.B. by force did not satisfy the requirement of *Buggs* that the confinement be independent of, and not incidental to and inherent in, his attempted rape of J.B.  With the State having abandoned a theory of kidnapping based on petitioner's taking J.B. into the car, petitioner could have confined J.B. under *Buggs* in two ways during the encounter:  while fighting with J.B. inside the car; and while holding J.B.'s keys outside the car.

The Court first addresses petitioner's conduct outside the car, as the KCOA relied solely on that conduct in denying petitioner post-conviction relief.  The KCOA concluded that petitioner confined J.B. after he had been kicked out of the car by retrieving her keys and thus trapping her in the car (she could not drive away, and he could seize her if she attempted to get out).  *See Sumpter*, 2019 WL 257974, at *4.  The KCOA further concluded that such confinement was independent of the attempted rape for purposes of *Buggs*.  *See id.* at *5.  The KCOA reached that conclusion in deciding that the evidence was sufficient to support a kidnapping conviction and that petitioner therefore could not establish the necessary prejudice under *Strickland*.  *See id.* at *3.  The KCOA applied the wrong standard, however – the issue is not whether the evidence was legally sufficient; the issue is whether there is a reasonable probability of a different outcome.  Thus, the state court's ruling deviated from the controlling federal standard and was contrary to clearly established federal law.  *See Milton v. Miller*, 744 F.3d 660, 670 (10th Cir. 2014).  The result is that this Court does not defer to the KCOA's resolution of this claim, and instead reviews the claim *de novo*.  *See id.* at 671.

The Court agrees with the KCOA that petitioner's conduct outside the car was independent of the sexual assault of J.B. Petitioner does not argue otherwise. Petitioner argued to the KCOA, however, and argues to this Court, that any confinement from outside the car could not support the conviction because any such confinement was not *by force*. The KCOA did not address this argument or explain how petitioner's conduct outside the car constituted confinement by force (as opposed to by deception or threat, which theories were not submitted to the jury). In its brief to this Court, the State has merely relied on the KCOA's opinion, and thus the State has failed to identify any Kansas authority to suggest that petitioner could have confined J.B. by force in this manner from outside the car. Nor has the Court located any such authority. *Cf. State v. Ransom*, 239 Kan. 594, 601 (1986) (chase did not constitute kidnapping; "[a]ny kidnapping must have occurred after the defendant made actual contact with the victim"). Considering only petitioner's conduct outside the car (as the KCOA did), if counsel had raised and argued this issue, petitioner would have had a strong defense to the kidnapping charge.

Although in proceedings in this Court the State has not relied on any conduct by petitioner inside the car, the trial court, in denying post-conviction relief, relied on petitioner's conduct both inside and outside the car. The court cited petitioner's conduct in pushing her into the car and forcing his way inside, striking her and holding her down, choking her and preventing her from yelling, grabbing her hand when she reached for the door, and taking her keys. This Court does not agree with the state court, however, that such conduct is independent of and not incidental to petitioner's sexual assault of J.B.

As noted above, the State abandoned any argument based on petitioner's taking J.B. by pushing her into the car, as no theory of kidnapping by taking was submitted to the jury. The remaining conduct by petitioner inside the car to restrain J.B. occurred entirely during his physical fights with J.B. as he attempted to hold her down in order to commit the sexual assault. As noted above, in *Buggs* the Kansas Supreme Court stated that the "standstill robbery" and the "ordinary rape" necessarily require some confinement, but that such confinement does not by itself support a kidnapping offense. *See Buggs*, 219 Kan. at 215. The supreme court applied that distinction in *State v. Cabral*, 228 Kan. 741 (1980), in which the court reversed a kidnapping conviction. In *Cabral*, the victim rode in the defendant's car for a period by consent, and then the defendant turned into a park, locked the door, proceeded behind a tree, and forcibly raped the victim. *See id.* at 743-44. Applying the *Buggs* standard, the court reasoned as follows:

> We have concluded that, under all the factual circumstances presented in the record, a separate and independent crime of kidnapping was not established. Here the defendant and his victim had been together all evening, driving around Hutchinson and stopping at various places by mutual consent. After leaving the first park and on the way to the dormitory where the victim resided, the defendant simply turned into the second park, locked the door, and proceeded to rape his victim. *When forcible rape occurs in an automobile, of necessity, some confinement of the woman is a necessary part of the force required in the commission of the rape. Such a confinement is of a kind inherent in the nature of forcible rape and incidental to the commission of the rape.*

*See id.* at 744-45 (emphasis added).

*Cabral* is the most apt precedent by which to consider the application of *Buggs* to petitioner's conduct in J.B.'s car. Petitioner's conduct in restraining J.B. occurred while fighting with her in his attempt to commit sexual assault, and the Kansas Supreme Court

14

made clear in *Cabral* that such conduct is merely incidental to the assault. The state trial court cited petitioner's conduct in grabbing J.B.'s hand when she reached for the door handle; but as the supreme court recognized, a perpetrator must confine the victim somewhat – and obviously prevent her from leaving – to commit the crime of rape. Petitioner did not take J.B. to another location to avoid detection or otherwise to facilitate the rape; in the parlance of the *Cabral* court, he simply proceeded to assault J.B. once he was alone with her in the car.

Some Kansas courts, in distinguishing *Cabral*, have noted that the victim in *Cabral* had consensually ridden around with the defendant for a period of time preceding the assault. Indeed, J.B. did not voluntarily spend the evening with petitioner prior to the assault in this case. The point of the *Cabral* court in citing that fact, however, was that the defendant had not taken or confined the victim until immediately prior to and as part of the assault. Moreover, in each of those other cases in which *Cabral* was distinguished, there was some conduct by the defendant that took the case beyond the "ordinary" rape in a single confined place in a relatively short time frame – for instance, the defendant had taken the victim or used restraints or moved the victim to a different place to facilitate the assault. *See, e.g.*, *State v. Halloway*, 256 Kan. 449, 452-53 (1994) (defendant did not rape the victim in the car, but dragged her into woods away from the highway to lessen the risk of detection); *State v. Blackburn*, 251 Kan. 787, 794 (1992) (defendant lessened the risk of detection by driving the victim to other locations); *State v. Zamora*, 247 Kan. 684, 696 (1990) (conduct went beyond that of *Cabral*; defendant's tying and gagging the victim and his lying in front of the door to the residence to prevent escape was not merely incidental

to and inherent in an "ordinary" rape); *State v. Howard*, 243 Kan. 699, 702 (1988) (defendant restrained the victim in a house for hours and refused to let her leave when she tried to flee after the assault); *State v. Coberly*, 233 Kan. 100, 105 (1983) (victim rode with the defendant for a prolonged period because of deception); *State v. Montes*, 28 Kan. App. 2d 768, 772 (2001) (defendant drove the victim to another location to facilitate the assault), *rev. denied* (Kan. June 12, 2001, and July 11, 2001).

Again, in the present case, the alleged confinement took place within the car, at a single location, during the attempted assault.  The State has not addressed the conduct inside the car, and thus the State has not cited any Kansas case in which such conduct solely within a vehicle has been found sufficient to support a kidnapping conviction.  *Cabral* is thus the most apt case here.

This conclusion is further supported by the KCOA's opinion in *State v. Burden*, 30 Kan. App. 2d 690 (2002), *rev'd*, 275 Kan. 934 (2003).  In *Burden*, the defendant had beaten and raped the victim in the bathroom of a residence, chased her when she fled toward the back door, and caught her and dragged her back to a bedroom, where he continued to beat and threaten her.  *See id.* at 700.  The KCOA held that under the *Buggs* standard, such conduct was "part and parcel of the beating rather than a crime apart from it," and that the defendant's movement of the victim "only enabled him to continue what he had started and was incidental to it."  *See id.* at 700-01.  The Kansas Supreme Court reversed, but only based on its holding that the *Buggs* standard for "facilitation" did not apply to a kidnapping conviction under K.S.A. § 21-3420(c) (taking or confining with intent to inflict injury or

terrorize); thus it did not find fault with the KCOA's conclusion that the conduct at issue would not satisfy the *Buggs* standard.  *See Burden*, 275 Kan. 934.

Mere days ago, the KCOA again applied the *Buggs* standard to reverse a kidnapping conviction in *State v. Olsman*, __ P.3d __, 2020 WL 5265521 (Kan. Ct. App. Sept. 4, 2020). The court held that the forceful confinement of the victim in that case was incidental and inherent to the force used to commit the attempted rape of the victim, as he "committed the attempted rape by physically overpowering [the victim] and continuing to physically control her movements, in spite of her efforts to resist the attack," until she was able to leave.  *See id.* at *5.  The court also stated:

> Rape through force necessarily and inherently requires confinement of the victim to a particular place where the rape occurs.  After all, if the victim were allowed to leave, there would be no rape.

*See id.* at *7.

The *Buggs* standard applies to petitioner's conviction under Section 21-3420(b), and as in *Cabral* and *Burden* and *Olsman*, the confining conduct at issue (in J.B.'s car) – including efforts to prevent J.B. from leaving – was part and parcel of the intended assault.

One might argue (although the State made no such argument here) that petitioner confined J.B. when he forcibly took her car keys while in the car, thereby hindering her ability to flee.  Such conduct would not necessarily be required as part of the assault.  The testimony at trial, however, does not support such a theory of confinement.  J.B. testified that petitioner made reference to the attached mace and took the keys to prevent J.B. from using that mace.  She also testified that she did not know how the keys ended up outside the car.  Petitioner testified that he ripped the mace off the keys and discarded it, and that

he grabbed the keys away so that J.B. could no longer hit him with the keys in her hand. He further testified that he did not know whether he threw the keys out of the car.  Thus, there was no certain evidence (only petitioner's speculation that he might have done so) that petitioner threw the keys out of the car (as opposed to finding the keys outside where they fell when petitioner was kicked out), and there was no evidence at all that he took the keys to prevent J.B. from driving away.  Thus, a reasonable jury that followed the testimony would not likely find that petitioner confined J.B. by taking her keys and throwing them outside the car.

The Court thus concludes, based on the Kansas precedent, that if confronted with the issue the Kansas Supreme Court would rule that petitioner's conduct inside the car (after he forced his way inside) did not constitute a separate crime of kidnapping under the *Buggs* standard.  As discussed above, petitioner also had a strong defense based on his conduct outside the car.

Accordingly, petitioner could have raised a defense to the kidnaping charge as submitted to the jury (confinement only, by force only) with a great likelihood of success based on the kidnapping statute as interpreted in *Buggs* and *Cabral*.  Based on the strength of that defense, there is little doubt that counsel's failure to raise that defense, based on settled caselaw, before or during or after trial, was objectively unreasonable.  *Buggs* is the seminal and oft-cited standard for the key facilitation element of the offense, and in light of the facts here, the Court can divine no possible strategic reason for failing to hold the State to that standard in its proof.  That failure to appreciate and assert this defense was especially inexcusable considering that this conviction proved the most serious for

18

purposes of petitioner's sentencing. Thus, the Court concludes that counsel's performance in this regard was constitutionally deficient.

The Court further concludes that petitioner has established the requisite prejudice here.[2] Under existing Kansas precedent, there is a significant likelihood that the Kansas Supreme Court would have ruled as a matter of law in petitioner's favor on this issue; and there is also a significant likelihood that a jury, if properly instructed on the law under *Buggs* and *Cabral*, would have found that petitioner did not confine (not merely take) J.B. by force (not by threat or deception), based on the charge submitted to it. The strength of this defense under Kansas law creates a probability of a different outcome sufficient to undermine confidence in the kidnapping conviction. Petitioner is therefore entitled to relief.

The Court takes this opportunity to stress that by this ruling it does not mean to take away from the seriousness of petitioner's sexual assault of J.B., whose testimony about petitioner's horrific conduct the jury credited. Petitioner was convicted of the attempted rape and aggravated sexual battery of J.B., and he was sentenced for those crimes. Nevertheless, Kansas law does not permit his additional conviction of the crime of kidnapping through confinement based on the force used to commit the assault, and when his counsel failed to assert that defense, petitioner was denied his constitutional right to the effective assistance of counsel. The Court therefore must order that petitioner's conviction

---

[2] The Court does not agree with petitioner that he was completely denied counsel or that counsel entirely failed to subject the State's case to meaningful adversarial testing, such that prejudice may be presumed under *United States v. Cronic*, 466 U.S. 648, 659 & n.25 (1984).

and sentence for aggravated kidnapping be vacated.  Petitioner is entitled to a new trial on that charge, and the instant petition is granted to that extent.

### B.    *Consolidation of Cases*

In the case involving two alleged victims, the trial court denied petitioner's motion to sever the charges into separate cases, one for each victim.  The trial court also granted the State's motion to consolidate the three cases (involving four alleged victims) for trial.  On direct appeal, the KCOA rejected petitioner's challenge to the consolidation, holding that the alleged crimes were of the same or similar character as required for consolidation under K.S.A. § 22-3203 and that the trial court therefore did not abuse its discretion in consolidating the cases.  *See Sumpter*, 2013 WL 6164520, at *3-6.

Petitioner now claims that his appellate counsel's performance was constitutionally deficient because she failed to challenge the denial of the motion for severance and thus failed to argue that the trial court violated its continuing duty to sever all four sets of charges to prevent prejudice to petitioner.  *See, e.g.*, *State v. Coburn*, 38 Kan. App. 2d 1036, 1058-59 (2008) (citing *State v. Shaffer*, 229 Kan. 310, 312 (1981)), *rev. denied* (Kan. July 3, 2008).  The state district court and the KCOA denied this claim of ineffective assistance of counsel.  *See Sumpter*, 2019 WL 257974, at *5-10.  Although petitioner challenged only appellate counsel's performance, the KCOA treated the claim as one involving both trial and appellate counsel.  *See id.* at *5.  After a thorough analysis, the KCOA concluded that petitioner could not demonstrate undue prejudice from consolidation, primarily because in separate trials evidence of the other alleged incidents would have been admissible and would likely have been introduced and admitted.  *See id.*

at *5, 8-10.  The KCOA also noted that in separate trials petitioner would have in fact been *disadvantaged* because in the consolidated trial jurors were instructed not to consider evidence involving one incident in deciding charges based on another incident, while in separate trial jurors would essentially have been free to consider evidence of all of the incidents for any purpose.  *See id.* at *10.  The KCOA further concluded that the verdicts did not reveal any obvious prejudice, as the mixed verdicts (involving an acquittal and conviction on lesser included offenses) indicated that the jury did not act in a blanket fashion but considered each charge involving each victim separately.  *See id.* at *8.  Finally, the KCOA rejected petitioner's argument that in separate trials he could have chosen to testify in some and remain silent in others, as based on a faulty premise that other incidents would not be in evidence in separate trials; the implication is that if multiple incidents were at issue in a separate trial, petitioner would have had to testify to address any incident, just as he did in the consolidated trial.  *See id.* at *10.

In pursuing this claim in this Court, petitioner repeats the same arguments rejected by the KCOA concerning whether he suffered undue prejudice from consolidation and a denial of severance.  He argues that appellate counsel, in challenging the propriety of consolidation on direct appeal, unreasonably failed to make the separate argument that consolidation resulted in undue prejudice.  With respect to *Strickland*'s second prong, petitioner argues that such an appeal would have been successful, and that the KCOA applied the *Strickland* standard unreasonably in failing to address that precise question.

It is true that the KCOA's opinion is not clear with respect to its application of *Strickland*'s second prong.  The KCOA chose to "pass" on reviewing counsel's strategic

considerations in arguing the consolidation issue, and thus it skipped to the second prong relating to prejudice. *See id.* at *7. It stated that the second prong required it to explore whether the outcome might have been different with separate trials. *See id.* As noted, it concluded that separate trials would not have been materially different because evidence of other incidents likely would have been admitted even in separate trials. *See id.* at *7-10.

The Tenth Circuit has made clear that in evaluating a claim of ineffective assistance of appellate counsel in a Section 2254 proceeding, under clearly established law the requirement of prejudice under *Strickland*'s second prong "means the defendant must show a reasonable probability that, but for his counsel's unreasonable failure to raise a particular nonfrivolous issue, he would have prevailed on his appeal." *See Milton v. Miller*, 744 F.3d 660, 669 (10th Cir. 2014) (internal quotations omitted) (quoting *Smith v. Robbins*, 528 U.S. 259, 285 (2000)). Thus, the issue is whether petitioner probably would have prevailed on appeal if counsel had raised this issue concerning prejudice from consolidation. In focusing on whether separate trials would have been different instead of on whether the appeal would have succeeded, the KCOA appears not to have applied the correct standard under *Strickland*'s prejudice prong.[3]   Accordingly, the Court reviews petitioner's ineffective-assistance claim *de novo*. *See id.* at 671.

---

[3] This seeming misapplication may have resulted from the KCOA's consideration of the claim as involving both trial and appellate counsel, as prejudice from trial counsel's failure to argue the issue properly would depend on the likely outcome in the trial court. In his initial and reply briefs to the KCOA, petitioner clearly claimed ineffective assistance by appellate counsel; thus, the source of the KCOA's confusion is unclear.

The Court concludes, however, that petitioner has failed to show that a prejudice-from-consolidation argument would likely have succeeded on direct appeal.  Petitioner notes that on direct appeal one judge issued a concurring opinion, stating that he concurred with respect to the consolidation issue "based on how the parties framed and argued the issue on appeal."  *See Sumpter*, 2013 WL 6164520, at *12 (Atcheson, J., concurring).  That same judge authored the KCOA's post-conviction opinion, however, and that opinion includes the following footnote:

> As a member of the panel deciding the direct appeal, I wrote a short concurrence that deliberately bordered on the delphic but hinted at reservations about consolidation.  I was troubled by the possibility of undue prejudice to [petitioner] in a single trial of all four incidents.  But the appellate lawyer did not brief that issue and at oral argument indicated she hadn't really considered it.  So I confined my review to what the parties presented.  The issue has been fully briefed in this proceeding.  Based on that argument and the broad legislative mandate in [Kansas Rule 455(d)], I am persuaded [petitioner] did not face legally impermissible prejudice in the consolidated trial.

*See Sumpter*, 2019 WL 257974, at *7 n.3 (Atcheson, J.) (citations omitted).  Moreover, the KCOA stated plainly its conclusion that petitioner "cannot demonstrate undue prejudice in his consolidated trial."  *See id.* at *5.  Thus, given this holding of the KCOA – ruled by a panel including two of the judges on the panel hearing petitioner's direct appeal – it is not likely that petitioner would have prevailed on direct appeal if counsel had argued prejudice from consolidation.  Accordingly, the Court concludes that petitioner has failed to satisfy *Strickland*'s prejudice prong, and it therefore denies this claim.

C.    *Prosecutorial Misconduct*

On direct appeal, the KCOA rejected petitioner's argument based on misconduct by the prosecutor in commenting on petitioner's credibility in the State's closing argument. *See Sumpter*, 2013 WL 6164520, at *8-11.  Petitioner now claims that his appellate counsel rendered constitutionally deficient performance in failing to argue two other instances of prosecutorial misconduct.[4]

Again, because the claim is that appellate counsel failed to raise the issue, the prejudice inquiry focuses on whether there is a reasonable probability that such an appeal would have succeeded.  *See Milton*, 744 F.3d at 669.  Again, the KCOA did not explicitly apply that standard.  The KCOA made clear in its opinion, however, that such an appeal by petitioner under Kansas law would not have succeeded.  Thus, petitioner cannot establish the necessary prejudice here.

First, petitioner claims that appellate counsel should have argued that the prosecutor committed misconduct by misstating the intent element for attempted rape as an intent to have sex as opposed to an intent to commit rape.  In his closing argument, the prosecutor stated as follows:

> And he told you what his intent was with [J.B.].  He minimizes it and says well, I didn't go into that car with the intent to have sex with her.  But

---

[4] In asserting this claim in this Court, petitioner has argued that these instances of misconduct violated his right to due process and that both trial and appellate counsel should have raised these issues.  In his petition to the state district court and in his briefs to the KCOA, however, he claimed only that appellate counsel rendered ineffective assistance with respect to the instances of prosecutorial misconduct, and the district court and the KCOA addressed only that narrow basis in denying the claim.  *See Sumpter*, 2019 WL 257974, at *10.  Petitioner did not argue to the state courts ineffective assistance by trial counsel or a due process violation with respect to prosecutorial misconduct.  Thus, petitioner failed to exhaust with respect to any such claim, and this Court has confined its consideration to a claim of ineffective assistance by appellate counsel.

> clearly he told you on the stand, I was going to have sex with her, I thought, I thought she wanted it.  Clearly he intended to have sex.  I don't have to prove rape occurred, I don't have to prove sex occurred, I have to prove he took her – or I'm sorry, he confined her with the intent to commit sex, commit rape against her.  Clearly that was his intent, he told you even yesterday that's what he intended to do.

Petitioner takes issue with the prosecutor's statement that he had to prove that petitioner confined the woman "with the intent to commit sex."  The KCOA concluded that this "slip" did not constitute misconduct, as the prosecutor merely "misspoke, realized as much, and immediately offered a revised statement of the law to the jurors."  *See Sumpter*, 2019 WL 257974, at *13.  The Court agrees with that description of what occurred.

The Court disagrees with petitioner's statement that the prosecutor repeated his misstatement of the law.  When the prosecutor argued in that excerpt that petitioner intended to have sex, he was addressing the defense that petitioner did not intend to have sex with J.B. when he entered the car; he did not thereby suggest that he need not prove an intent to have *illegal* sex.  Moreover, the prosecutor had previously argued in closing that petitioner's intent was to have sex with J.B. "with or without her consent" and that petitioner then acted without her consent.  Immediately after that argument, the prosecutor stated the law properly, as follows:

> I have to prove that he intended to commit the crime of rape.  I don't have to prove rape occurred.  I have to prove that he intended to commit it.

Thus, the prosecutor's argument was generally consistent and correct concerning the intent element.  He misstated the element a single time, and then immediately corrected himself by stating the element correctly.  Indeed, his statement that he had to show an intent to

"commit sex" – instead of a mere intent to "have" sex – demonstrates that he really meant to state the element correctly, as "commit" suggests an improper act.

Petitioner also argues that the effect of the prosecutor's misstatement was exacerbated by the fact that his own counsel stated that the State had to prove an intent to have sexual intercourse.  Of course, a misstatement by his own counsel would not mean that the prosecutor committed misconduct in making a similar mistake.  Moreover, petitioner's counsel did not misstate the intent element.  She was merely suggesting that the State could not prove that he intended to have sex with J.B., which would provide a defense to the charge that he intended unconsensual sex.  Immediately before that statement, petitioner's counsel stated that the State had to prove an intent to rape the accuser.  There is no basis to conclude that the prosecutor was somehow trying to exploit confusion sown by defense counsel.

Finally, petitioner is incorrect in arguing that the Court failed to correct the prosecutor's misstatement.  The jury instruction setting forth the elements for the charge of the attempted rape of J.B. stated properly that the State had to prove an intent by petitioner to commit the crime of rape, defined as sex without consent.

Accordingly, petitioner has not shown that an appeal based on such a claim of prosecutorial misconduct would have succeeded.  The KCOA reasonably concluded that the misstatement at issue did not constitute misconduct, and petitioner has not shown that the KCOA, despite its post-conviction opinion to the contrary, would have found misconduct to such a degree to require reversal of petitioner's conviction for attempted rape of J.B.  The Court therefore denies this claim of ineffective assistance of counsel.

Second, petitioner argues that appellate counsel's performance was deficient because he failed to assert that the prosecutor committed misconduct in closing argument by mischaracterizing a pro se motion by petitioner as including an admission that petitioner committed lesser-included offenses. As the KCOA noted, in the motion petitioner stated that he and his trial counsel had concluded that the conduct to which witnesses testified at the preliminary hearing amounted only to lesser-included offenses; thus, petitioner had not actually admitted to committing those offenses. Nevertheless, the KCOA, applying standards set forth by the Kansas Supreme Court for claims of prosecutorial misconduct, concluded that the prosecutor's misrepresentation had not been flagrant or born of ill will, and that it was not so significant to have had a material effect on the verdicts. *See id.* at *12. With respect to the latter point, the KCOA noted that petitioner had admitted in his testimony to conduct "likely amounting" to minor crimes against the accusers. *See id.*

In light of that conclusion by the KCOA in post-conviction proceedings, the Court concludes that petitioner has not shown that he probably would have prevailed on appeal if appellate counsel had pursued this instance of prosecutorial misconduct. Petitioner has now had a full opportunity to argue to the KCOA that such misconduct warrants reversal under the applicable Kansas standards, and the KCOA rejected that argument. Based on its own review of the entirety of the prosecutor's closing and the evidence against petitioner, this Court is not persuaded that this mischaracterization by the prosecutor was so excessive and prejudicial to create a reasonable probability that the KCOA (or the

Kansas Supreme Court) would have ruled differently on direct appeal.[5]  Accordingly, the Court denies this part of the claim as well.

### D.    *Continuances*

Petitioner claims that his trial counsel rendered ineffective assistance, in violation of the Sixth Amendment, in obtaining continuances of his trial date without his consent, causing him to forfeit his statutory speedy trial rights.  The KCOA, relying on precedent from the Kansas Supreme Court, rejected this claim, holding that the Kansas speedy trial statute did not require reversal of the convictions.  *See Sumpter*, 2019 WL 257974, at *13. The speedy trial statute was amended while petitioner's case was on direct appeal, and the amendment applied to petitioner's case; and under that amendment, as interpreted by the Kansas Supreme Court, because defendant's counsel requested the continuances, that time would not be charged against the speedy trial period, even if the continuances were later deemed improper because petitioner had not been consulted.  *See id.* (citing *State v. Dupree*, 304 Kan. 43 (2016)).  The Court is bound by the Kansas courts' interpretation of the state's speedy trial statute.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).  Thus, in the absence of a violation, trial and appellate counsel were not ineffective in failing to request that the convictions be set aside on that basis.

---

[5] The Court does not agree with petitioner that the prosecutor repeated the improper statement multiple times.  The prosecutor referred to the pro se motion only one time.  On the other cited occasions, the prosecutor argued that petitioner had admitted to lesser-included offenses, but that argument could properly have been based on defendant's own testimony.  In addition, in cross-examining petitioner about the pro se motion, the prosecutor accurately quoted the relevant statement about the lesser-included defenses, and the jurors were instructed that they were to consider as evidence the testimony and not statements by counsel.

The KCOA essentially held that trial and appellate counsel were not ineffective for failing to raise this issue after the fact (at trial or after).  The KCOA did not address whether trial counsel's performance was deficient at the time the continuances were requested without petitioner's consent.  Petitioner has not pursued such an argument in asserting this claim, however, and thus petitioner has not shown that counsel acted unreasonably in seeking additional time to prepare for trial.

Petitioner responds to the decision of the KCOA by arguing that that court failed to address his argument that trial counsel violated a duty of loyalty to him.  Petitioner argues that counsel was eventually acting under a conflict of interest because if she had raised the issue after-the-fact, she would have had to admit her mistake in seeking the continuances without petitioner's consent.  Petitioner argues that such a conflict of interest means that prejudice may be presumed under the Supreme Court's opinion in *Strickland*.  In that case, however, the Supreme Court stopped short of creating a per se rule of prejudice for conflicts of interest; rather, the Court held that "[p]rejudice is presumed only if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance."  *See Strickland*, 466 U.S. at 692 (internal quotations omitted) (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980)).

Petitioner has not addressed this standard from *Strickland* for the presumption of prejudice.[6]  Thus petitioner has not shown that a speculative desire to avoid admitting an

---

[6] Petitioner did not allege a breach of counsel's duty of loyalty in his petition to the state district court.  Nor did petitioner cite *Strickland* or argue that prejudice may be presumed in pursuing this claim in his briefs to the KCOA.  Thus it is not clear that Continued…

error meets the requirement that counsel was "actively representing conflicting interests." Nor has petitioner shown how the alleged conflict actually affected trial counsel's performance.  Indeed, the KCOA has held that trial counsel could not successfully have argued a violation of the state speedy trial statute.  In sum, petitioner has not established that the KCOA unreasonably applied *Strickland* in denying this claim, and the Court therefore also denies this claim for relief.

### E.   *Jury Venire*

Petitioner claims that he was denied his rights under the Sixth Amendment because the panel from which his jury was selected did not include any African-Americans and was therefore underrepresentative.  In denying this claim, the state district court ruled that the issue should have been raised on direct appeal and that no exceptional circumstances excused that failure.  The KCOA treated this claim as one of ineffective assistance of trial and appellate counsel, based on counsel's failure to pursue the issue at trial or on direct appeal.  *See Sumpter*, 2019 WL 257974, at *14.  The KCOA denied the claim, based on petitioner's failure to show that African-Americans were routinely underrepresented in jury pools in that county.  *See id.*

As a preliminary matter, it remains unclear whether petitioner is attempting to claim ineffective assistance of counsel with respect to this claim.  Petitioner did *not* make such a claim in his district court post-conviction petition or in his initial brief on appeal to the KCOA.  Indeed, petitioner noted in those briefs that trial counsel objected to the panel's

---

petitioner satisfied his exhaustion requirement by presenting this argument fully to the state courts.

lack of African-Americans and moved for a mistrial on that basis.  In his reply brief on appeal, petitioner stated that trial counsel did not raise this issue sufficiently and that appellate counsel ignored the issue.  In his petition to this Court, petitioner claims that trial and appellate counsel were ineffective with respect to this issue, and he makes the same claim in his claim summary in his initial brief to this Court; but in his argument on this issue and in his reply brief, he has not mentioned counsel or the *Strickland* standard.

Ultimately, the Court need not decide the precise basis for this claim.  The KCOA denied the claim because petitioner failed to make the required showing of underrepresentation, and such a failure would doom either a Sixth Amendment claim or a claim of ineffective assistance (because of a lack of prejudice) with respect to the issue. The Court therefore addresses the merits of the Sixth Amendment claim.

The parties agree that the governing standard may be found in the Supreme Court's opinion in *Berghuis v. Smith*, 559 U.S. 314 (2010), which standard the KCOA applied.  As the Supreme Court stated in that case, "[t]he Sixth Amendment secures to criminal defendants the right to be tried by an impartial jury drawn from sources reflecting a fair cross-section of the community."  *See id.* at 319 (citing *Taylor v. Louisiana*, 419 U.S. 522 (1975)).  To establish a prima facie violation of the Sixth Amendment's fair-cross-section requirement, a criminal defendant "must prove that (1) a group qualifying as distinctive (2) is not fairly and reasonably represented in jury venires, and (3) systematic exclusion in the jury selection process accounts for the underrepresentation."  *See id.* at 327 (internal quotations omitted) (citing *Duren v. Missouri*, 439 U.S. 357, 364 (1979)).

Petitioner bases this claim on the fact that his jury venire lacked any African-Americans while that group makes up 9.3 percent of the county's population. The KCOA noted, however, that petitioner had not presented any evidence that African-Americans were routinely or systematically underrepresented on jury venires in that county. In support of the present petition, petitioner has not identified any evidence overlooked by the KCOA. Petitioner continues to rely on the fact that his own venire was underrepresentative and on speculation concerning possible causes of underrepresentation in venires in that county.[7] That is not enough, as petitioner did not show in the state courts – and has still not shown – that African-Americans were *routinely* or *systematically* underrepresented in venires in that county. Thus, petitioner has not shown that the KCOA misapplied the *Berghuis* standard for this type of claim or unreasonably applied any facts.

Petitioner argues that the KCOA had no basis for its statement that "[t]he absence of African-Americans from the particular jury panel called for his case is nothing more than a statistical anomaly so far as the record evidence demonstrates." It is clear, however, that the KCOA based that conclusion on petitioner's lack of evidence that such underrepresentation was systematic and not an aberration (an "anomaly"). The KCOA based its decision on a lack of evidence to meet the applicable standard, and there is no basis to overturn that decision.

---

[7] By notice of supplemental authority, petitioner has submitted a survey and an article concerning the issue of low jury pay, which petitioner cites as one such possible cause. Those materials are not helpful, as they do not contain any evidence that African-Americans were systematically underrepresented in the county. Although the submission is not helpful, the Court does not believe that it was improper, and the Court therefore denies the State's motion to strike the notice of supplemental authority.

F.    _Lifetime Registration and Supervision_

Petitioner claims that the conditions of his sentence that require (a) his registration as a sexual offender and (b) lifetime supervision are unconstitutional, specifically violating due process, equal protection, and the Eighth Amendment's prohibition against cruel and unusual punishment.  Petitioner concedes that the Kansas Supreme Court has previously rejected such an argument, but, citing a single law review article in support, he contends that those decisions were based on the faulty assumption that sexual offenders are more likely to re-offend.  The KCOA denied this claim, noting that the Kansas Supreme Court has rejected the argument and that petitioner had failed to explain how his lifetime supervision violates the Equal Protection Clause.[8]

The Court denies this claim.  Petitioner has not shown how the KCOA's rejection of this claim is contrary to or constitutes an unreasonable application of settled precedent of the United States Supreme Court.  Indeed, petitioner has not cited any federal law in support of this claim or otherwise addressed the applicable frameworks for the constitutional provisions he invokes.  Nor has he shown or even suggested that the KCOA misapplied any facts in rejecting this claim on a legal basis.  Accordingly, petitioner has not shown that he is entitled to relief on this basis under Section 2254.

G.    _Application of_ Apprendi

---

[8] The State argues that this claim was defaulted by petitioner's failure to raise these issues on his direct appeal.  The KCOA did not reject this claim on the basis of such a default, however, but instead addressed the merits of the claim.  This Court therefore does likewise.

In his last claim, petitioner argues that the trial court's use of his criminal history in sentencing him violated the constitutional requirement, recognized in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that any fact that increases a sentence beyond the statutory maximum must be found by a jury beyond a reasonable doubt. *See id.* at 490. The KCOA followed precedent from the Kansas Supreme Court in rejecting this claim both on direct appeal and in post-conviction proceedings. *See Sumpter*, 2013 WL 6164520, at *11; *Sumpter*, 2019 WL 257974, at *15. Petitioner argues that the opinions by the Kansas Supreme Court on which the KCOA relied were wrongly decided.

The Court denies this claim. Petitioner has not cited any federal law other than *Apprendi*, and he has not explained how that opinion applies in this case. In fact, in deciding *Apprendi*, the Supreme Court held that its rule applied to facts "[o]ther than the fact of a prior conviction." *See Apprendi*, 530 U.S. at 490. Only last year the Supreme Court confirmed that the fact of a prior conviction remains an exception to the general rule of *Apprendi*. *See United States v. Haymond*, 139 S. Ct. 2369, 2377 n.3 (2019). Thus, petitioner has not shown that the KCOA's rejection of this claim is contrary to or an unreasonable application of settled law of the Supreme Court.

In addition, in his summary, one-paragraph argument on this issue, petitioner appears to argue that the trial court also violated *Apprendi* by its use of "aggravating factors" to sentence him. Petitioner has not identified those factors or explained *Apprendi*'s application to such factors under Kansas law, and thus petitioner has not established his entitlement to relief on this basis. Moreover, on direct appeal petitioner argued that the trial court improperly imposed a sentence at the upper end of the applicable sentencing

range under Kansas law, instead of at the range's midpoint. The Kansas Supreme Court, however, has interpreted the relevant Kansas sentencing statutes as giving a trial court discretion to sentence anywhere within the sentencing range, without the need to find additional facts; thus, an upper-range sentence does not exceed the statutory maximum, and the *Apprendi* rule is not implicated. *See State v. Johnson*, 286 Kan. 824, 840-52 (2008). This Court is bound by the Kansas Supreme Court's interpretation of Kansas law. *See Bradshaw*, 546 U.S. at 76. Accordingly, under Kansas law, a sentence within the guideline range does not exceed the statutory maximum, and the imposition of such a sentence without additional jury findings does not violate *Apprendi*. The Court denies this claim in its entirety.

## V.    **Certificate of Appealability**

Rule 11 of the Rules Governing Section 2254 Cases states that the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).[9] To satisfy this standard, a petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *See Saiz v. Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282

---

[9] [1]The denial of a Section 2254 petition is not appealable unless a circuit justice or a circuit or district judge issues a certificate of appealability. *See* Fed. R. App. P. 22(b)(1); 28 U.S.C. § 2253(c)(1).

(2004)).  Because it is clear that defendant is not entitled to relief on the claims denied herein, the Court denies a certificate of appealability in this case with respect to those claims.

IT IS THEREFORE ORDERED BY THE COURT THAT the petition for relief pursuant to 28 U.S.C. § 2254 is **granted in part and denied in part**.  The petition is granted with respect to petitioner's aggravated kidnapping conviction, which is hereby vacated.  The petition is otherwise denied.

IT IS FURTHER ORDERED BY THE COURT THAT petitioner's motion for discovery and an evidentiary hearing (Doc. # 23) is **denied**.

IT IS FURTHER ORDERED THAT the State's motion to strike petitioner's notice of supplemental authority (Doc. # 25) is **denied**.

IT IS SO ORDERED.

Dated this 10th day of September, 2020, in Kansas City, Kansas.

*s/ John W. Lungstrum*
John W. Lungstrum
United States District Judge